## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

NICOLE OLSEN,
*as Class Representative,*

    Appellant,

    v.

JANET M. NESSE, *in her capacity as
Chapter 7 Trustee for* CREATIVE
HAIRDRESSERS, INC. and
RATNER COMPANIES, L.C.,

    Appellee.

Civil Action Nos. TDC-21-3289
TDC-21-3290
TDC-22-0368
TDC-22-0369

## MEMORANDUM OPINION

Appellant Nicole Olsen has appealed two Orders of the United States Bankruptcy Court for the District of Maryland arising out of the Chapter 11 bankruptcy proceedings of Debtors Creative Hairdressers, Inc. ("CHI") and Ratner Companies, L.C. ("Ratner") (collectively, "the Debtors"). These consolidated appeals seek review of the Orders determining that (1) Olsen's claim for liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (2018), is not entitled to priority in bankruptcy under 11 U.S.C. § 507(a)(4)(A); and (2) the claim for FLSA liquidated damages fails because the employer acted in good faith. Having reviewed the submitted materials, the Court finds that no hearing is necessary because the facts and legal arguments have been adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019(b). For the reasons set forth below, the Orders will be AFFIRMED IN PART and REVERSED AND REMANDED IN PART.

## BACKGROUND

### I.    Failure to Pay Wages

Before the spring of 2020, CHI operated approximately 800 hair salons under the Hair Cuttery, Bubbles, and Cielo brands. CHI employed over 10,000 employees and operated salons in approximately 15 states and the District of Columbia. Ratner provided management services to CHI and employed certain management staff for the salons.

In 2019 and early 2020, CHI faced financial difficulties due to increased competition. To address the downturn, CHI secured additional capital investments and implemented a business plan involving closing certain stores, decreasing overhead costs, and reducing the number of employees.

In March 2020, the COVID-19 pandemic spread throughout the United States, resulting in closure and lockdown orders by state and local governments. With these orders, CHI was forced to close its salons and furlough most of its employees in late March 2020. Because CHI generated its revenues from payments made at the salons, the closures resulted in an almost immediate depletion of almost all of the company's liquid assets.

CHI had sufficient funds to pay its employees for the two-week pay period ending March 14, 2020, but it lacked funds to pay them for work completed from March 15, 2020 to March 21, 2020. On April 7, 2020, the date on which wages earned from March 15 to March 21 would ordinarily be paid, CHI was unable to make payroll. At that time, CHI was engaged in efforts to identify an investor or purchaser to provide financing to allow it to remain as an operating business and to pay its employees the late wages. CHI then agreed to sell its business to HC Salons pursuant

to an agreement under which HC Salons committed to provide debtor-in-possession financing to enable CHI to pay its employees the wages due on April 7, 2020.

Olsen, a hairstylist, was working at a CHI salon in New Jersey when it was closed due to the COVID-19 pandemic on March 21, 2020 and therefore did not receive wages for the week ending on that date. On April 7, 2020, Olsen and three other CHI hair stylists filed a putative class and collective action against Ratner in the United States District Court for the District of New Jersey ("the New Jersey Case") for the unpaid wages due on April 7, 2020 and liquidated damages under the FLSA and state statutes.

## II.    Bankruptcy Court Proceedings

On April 23, 2020, CHI and Ratner separately filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Maryland ("the bankruptcy court") in two separate cases, No. 20-14583 (CHI) and No. 20-14584 (Ratner), which resulted in an automatic stay of the New Jersey Case. *See* 11 U.S.C. § 362 (2018). The bankruptcy court ordered that the two bankruptcy cases would be jointly administered. After an emergency hearing on April 27, 2020, the bankruptcy court issued an order on April 28, 2020 granting a request by CHI to pay its employees their wages for the March 15 to March 21, 2020 time period from financing provided . by the identified purchaser, HC Salons. Olsen and other employees received these wages.

Olsen, as a class representative, then filed identical proofs of claim ("the Proofs of Claim"), one against CHI and one against Ratner, in the two different bankruptcy cases. In the Proofs of Claim, Olsen sought $4 million in liquidated damages associated with the unpaid wages for the period from March 15 to March 21, 2020 and asserted that the claim was entitled to priority status as wages pursuant to 11 U.S.C. § 507(a)(4). The Debtors objected to the Proofs of Claim on the grounds that (1) a claim for FLSA liquidated damages is not entitled to such priority; and (2)

3

liquidated damages were not owed because the Debtors acted in good faith when they failed to pay

the unpaid wages on time due to financial hardship caused by the COVID-19 pandemic. *See* 29

U.S.C. § 260. After a hearing on December 8, 2021, the bankruptcy court issued an Order and a

Memorandum of Decision ("the First Bankruptcy Order") on December 13, 2021 in which it

concluded that FLSA liquidated damages are not entitled to priority status. *In re Creative

Hairdressers, Inc.* ("*In re CHI I*"), 637 B.R. 561, 565 (Bankr. D. Md. 2021). Although CHI

requested that the bankruptcy court deny the request for liquidated damages outright on the

grounds that CHI acted in good faith, the bankruptcy court did not reach that issue because the

parties stated that the claim had meaningful value only if it was entitled to priority. *Id.* at 564 n.2.

On December 22, 2021, Olsen filed a Notice of Appeal of that ruling.

At a status conference held on January 6, 2022, the parties requested that the bankruptcy

court resolve the remaining issues, including the question of the good faith exception, so that they

could all be addressed in a bankruptcy appeal so as to "prevent piecemeal litigation." *In re

Creative Hairdressers, Inc.* (*"In re CHI II"*), 639 B.R. 310, 313 (Bankr. D. Md. 2022). On January

26, 2022, the bankruptcy court issued a Memorandum and Order ("the Second Bankruptcy Order")

denying Olsen's claim for FLSA liquidated damages based on a finding that CHI was not liable

for liquidated damages associated with the failure to pay the unpaid wages because CHI acted in

good faith by moving quickly to find a buyer willing to provide debtor-in-possession financing to

"immediately pay the employees pending the sale." *In re CHI II*, 639 B.R. at 318. On February

11, 2022, Olsen filed a timely Notice of Appeal of the Second Bankruptcy Order.

The two appeals to this Court of the First Bankruptcy Order in the two bankruptcy cases,

Nos. TDC-21-3289 and TDC -21-3290, and the two appeals in those same cases of the Second

Bankruptcy Order, Nos. TDC-22-0368 and TDC-22-0369, have been consolidated, so both the

bankruptcy priority issue and the good faith issue are now before this Court. This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158. The appeals are fully briefed, and the Court finds that no hearing is necessary pursuant to Fed. R. Bankr. P. 8019(b).

## DISCUSSION

In these consolidated appeals, Olsen seeks review of two rulings by the bankruptcy court. First, Olsen argues that the bankruptcy court erred in concluding that liquidated damages arising from FLSA violations are not entitled to priority as "wages" pursuant to 11 U.S.C. § 507(a)(4), because liquidated damages are designed to compensate an employee for life needs during the period of non-compliance with the FLSA and therefore are properly classified as wages. Appellant's Brf. at 4-5, ECF No. 6. Second, Olsen argues that the bankruptcy court improperly applied the good faith exception from liquidated damages under 29 U.S.C. § 260 by adopting a "hardship" standard and finding good faith because CHI reasonably failed to pay due to financial hardship, rather than assessing whether CHI had a good faith legal basis for failing to comply with the FLSA. Appellant's Brf. at 7.

## I.    Standard of Review

On an appeal from the bankruptcy court, this Court reviews legal conclusions *de novo*, factual findings for clear error, and discretionary decisions for abuse of discretion. *Copley v. United States (In re Copley)*, 959 F.3d 118, 121 (4th Cir. 2020); *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 639 (4th Cir. 2004). The bankruptcy court's interpretations of the bankruptcy priority statute and of the FLSA are legal questions subject to *de novo* review. *See Coleman v. Community Trust Bank (In re Coleman)*, 426 F.3d 719, 724 (4th Cir. 2005) ("A ruling concerning the proper interpretation of a statute is a legal determination, which we review de novo."); *Jordan v. Rayman, Martin & Fader, Inc. (In re Rayman, Martin & Fader, Inc.)*, 170

5

B.R. 286, 288 (D. Md. 1994) (reviewing *de novo* the question of whether pre-petition claims for wages and late charges should be given priority under the bankruptcy code). While the proper meaning of the FLSA good faith exception is a legal question subject to *de novo* review, the bankruptcy court's determination of whether to apply that exception under the facts before it is a discretionary determination which this Court reviews for abuse of discretion. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011).

## II.     Priority of FLSA Liquidated Damages

In the First Bankruptcy Order, the bankruptcy court rejected Olsen's argument that the claim for FLSA liquidated damages should receive priority status in bankruptcy as "wages" under 11 U.S.C. § 507(a)(4)(A) on the grounds that "liquidated damages under the Fair Labor Standards Act are compensation for potential harm caused by delaying the payment of wages and are not 'wages...earned' by employees as required by § 507(a)(4)(A)." *In re CHI I*, 637 B.R. at 562.

In 11 U.S.C. § 507(a), the Bankruptcy Code provides a list by which Congress has established a purposeful order to determine creditor priority in bankruptcy. 11 U.S.C. § 507(a). At issue here is the language of § 507(a)(4)(A), which grants fourth-level priority to unsecured claims, up to a specified amount, "earned within 180 days before the date of the filing of the [bankruptcy] petition or the date of the cessation of the debtor's business, whichever occurs first," for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual[.]" *Id.* § 507(a)(4)(A). The question before the Court is whether FLSA liquidated damages constitute "wages" or "salaries" under this provision.

In assessing the meaning of a statute, including the proper interpretation of a term such as "wages," courts are to "afford the law's terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021). Where the Bankruptcy Code

6

generally, and the priority statute specifically, do not provide a definition of the terms "wages" or "salaries," the Court considers the contemporary ordinary meaning of the term "wages," which is defined as "compensation given to a hired person for his or her services." Wages, Black's Law Dictionary (4th ed. 1968); *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225 (1994) (considering dictionary definitions from the time when the statutory language was first adopted); Bankruptcy Act of 1978, Pub. L. 95-598, 92 Stat. 2549, 2583 (including "wages, salaries, or commissions" in the priority statute for the first time, at 11 U.S.C. § 507(a)(3)). A "salary" is "a reward or recompense for services performed." Salary, Black's Law Dictionary (4th ed. 1968). Wages and salaries therefore generally consist of compensation for work or services performed.

FLSA liquidated damages, however, serve a different purpose. The FLSA provides liquidated damages pursuant to the following statutory language:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). By referring to liquidated damages as "an additional equal amount," the statutory language, fairly construed, identifies liquidated damages as a category of payment separate from unpaid wages. *Id.*

Moreover, in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), the United States Supreme Court, in holding that an employee's waiver of liquidated damages did not preclude a subsequent action to recover them, stated that FLSA liquidated damages "constitute[] compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Id.* at 706-07. As Congress recognized, "failure to pay the statutory minimum [wage] . . . may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of

7

workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Id.* at 707. The Court further described the provision as "reparations to restore damage done by ... failure to pay on time" and the private right to sue for liquidated damages as "an enforcement provision" of a "private-public character" which complements the federal government's injunctive and criminal enforcement powers. *Id.* at 708-09. Thus, an award of liquidated damages is not compensation for work or services performed, but is compensation for losses beyond unpaid wages that result from the financial hardship associated with the failure to receive owed wages on time. Such damages could include penalties associated with a failure to pay rent or credit card bills on time or the hardship associated with an inability to purchase sufficient groceries until wages were paid. The plain meaning of the terms "wages" and "salaries" as used in § 507(a)(4)(A) does not support an interpretation of "wages" so expansive as to include such damages. Although Olsen asserts that federal courts have ruled that liquidated damages constitute wages for purposes of § 507(a)(4)(A), she has cited no case in which the court actually made such a legal determination. *See Levin v. Levine*, No. 10-62226-CIV, 2011 WL 2295272, at *2 (S.D. Fl. June 8, 2011) (holding that attorney's fees incurred in FLSA litigation are not entitled to priority as wages under § 507(a)(4), without addressing the priority status of liquidated damages).

This conclusion is consistent with the principle that, in interpreting the priority provisions of the Bankruptcy Code, a narrow construction is favored. *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667-68 (2006) (applying the "equal distribution objective underlying the Bankruptcy Code, and the corollary principle that provisions allowing preferences must be tightly construed"). "The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors. Thus, statutory priorities must be

narrowly construed." *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994) (internal citations omitted).  To stretch the definitions of "wages" and "salaries" beyond their ordinary meaning to encompass liquidated damages intended to compensate for other damages would run afoul of this principle.

Accordingly, because FLSA liquidated damages are not wages under § 507(a)(4)(A), the Court will affirm the bankruptcy court's determination that Olsen's claim for FLSA liquidated damages is not entitled to fourth-level priority under the bankruptcy statute.

**III.    Good Faith Exception**

Olsen also asserts that the bankruptcy court erred in ruling that the Debtors are not liable for liquidated damages pursuant to the good faith exception from liquidated damages under 29 U.S.C. § 260. Under the FLSA, a prevailing employee is generally entitled to liquidated damages consisting of the full amount of unpaid wages, resulting effectively in double damages. *See* 29 U.S.C. § 216(b). The FLSA, however, further provides that "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof" not to exceed the statutory maximum. 29 U.S.C. § 260.

In the Second Bankruptcy Order, the bankruptcy court determined that the good faith exception was established because "CHI's delay in paying the March 15 - March 21 payroll was not its choice." *In re CHI II*, 639 B.R. at 317. Specifically, the bankruptcy court found that CHI had not engaged in "improvident or imprudent practices" and had been taking reasonable steps to address its business challenges, but once the COVID-19 pandemic hit, "[t]he unanticipated government shutdown of the business left it unable to pay the employees." *Id.* at 317-18. Where

9

the "effects of the pandemic were not known or foreseeable," the bankruptcy court concluded that "CHI's inability to pay the April 7 payroll was not its doing." *Id*. at 318. Further, the bankruptcy court found that after the shutdown, CHI attempted to find a buyer for its distressed business and required the purchaser to supply debtor-in-possession financing to pay the employees as soon as possible. *Id*. at 318. Finally, the bankruptcy court noted that the Debtors had jointly filed an emergency motion with the Chapter 11 petition in order to be able to pay its employees. *Id*. Based on these facts, the bankruptcy court held that because its "staunch focus was to be sure employees were paid quickly," CHI had acted in good faith and on reasonable grounds when it failed to pay wages on time. *Id*. Accordingly, the Court denied the claim for liquidated damages.

In reaching this conclusion, the bankruptcy court applied a standard set forth in *Richard v. Marriott Corp.*, 549 F.2d 303, 306 (4th Cir. 1977), in which the United States Court of Appeals for the Fourth Circuit stated that the good faith exception can apply when the "failure to obey the statute was both in good-faith and predicated upon such reasonable grounds that it would be unfair to impose more than a compensatory verdict." *In re CHI II*, 639 B.R. at 317. The bankruptcy court also stated that the Fourth Circuit has not always discussed "good faith" and "reasonable grounds" as separate prongs or required specific discussion of both before denying liquidated damages. *Id*. (citing *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984), and *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 357 (4th Cir. 1994)).

Although the bankruptcy court correctly quoted the language on the relevant standard set forth in *Richard*, this standard, including the terms "good faith" and "reasonable grounds that it would be unfair" to impose liquidated damages, must be construed in the context of the statutory language, under which regardless of whether these requirements are viewed as one or two prongs, there must be "reasonable grounds for believing that [the employer's] act or omission was not a

10

violation of the [FLSA]." 29 U.S.C. § 260. Good faith and unfairness are not open-ended terms

that permit a court to deny liquidated damages based only on a determination that the employer

acted reasonably under the circumstances; the unfairness to be considered must be the unfairness

of imposing liquidated damages on an employer which had a good faith belief that its pay practices

actually complied with the FLSA. This understanding is consistent with *Richard*, in which the

court held that the employer did not satisfy the good faith exception when it used a pay practice

for its tipped employees that conflicted with an administrative interpretation of the statute which

had been brought to its attention. *Id.* at 305-06. Because the court found that "the administrator's

opinion letter put the defendant on notice that it should look to its payment practices for tipped

employees," but the employer nevertheless "took a chance, acted at its peril, and lost," the court

found that the good faith exception did not apply. *Id.* at 306. Thus, the unfairness with which the

court was concerned was the unfairness of imposing liquidated damages on an employer which

had a good faith belief that it was following the law. *See id.* at 305-06.

This understanding is also consistent with other case law referencing the standard set forth

in *Richard.* In *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997), in which an employer violated

the FLSA by failing to pay a law enforcement officer overtime pay for time spent caring for a

tracking dog, the court quoted the standard set forth in *Richard* but then engaged in an analysis of

the good faith exception entirely focused on whether the employer had "reasonable grounds to

believe he was not violating FLSA." *Mayhew*, 125 F.3d at 217, 220-21 (upholding the application

of the good faith exception). Likewise, in *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336,

357, 358 (4th Cir. 1994), a case involving the different legal context of a violation of the Equal

Pay Act, the court, while referencing the standard set forth in *Richard*, considered the fact that the

employer conducted its own studies and consulted national studies to justify the plaintiff's pay and

11

upheld the application of the good faith exception even while finding that those studies were flawed. *Id.* at 357. In *Burnley v. Short*, 730 F.2d 136 (4th Cir. 1984), cited by the bankruptcy court in stating that both prongs need not always be addressed, the court specifically discussed the employer's reasonable legal theory that his motels did not satisfy the threshold volume of business to be subject to the FLSA, as well as his reliance on guidance from the Virginia Motel Association, in finding good faith. *Id.* at 140. Notably, in none of the cases referencing the standard set forth in *Richard* has the court found that the good faith exception applies based on the reasonableness of an employer's failure to pay due to financial hardship.

More recent case law demonstrates that the Fourth Circuit requires, consistent with the statutory language, that the employer acted in good faith on a reasonable belief that there was a legal basis to fail to pay wages. In *Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998), a case in which Emergency Medical Services workers were improperly denied overtime pay for certain sleep and meal time periods, the court upheld the denial of liquidated damages based on a finding of "good faith and reasonableness." *Id.* at 548. In reaching this conclusion, the court relied primarily on the facts that the employer had "produced evidence that it relied consistently on the advice of … its labor counsel, which indicates the County's good faith, even though the advice ultimately proved incorrect," it had made "well-reasoned, sound legal arguments" justifying its payment plan, and it had made "ongoing modification of its compensation structure to accommodate changes in the Act." *Id.* at 548-49. In light of these steps, the court held that under the good faith exception, "[a]lthough an employer 'may not simply remain blissfully ignorant of FLSA requirements,' it need not seek an opinion letter to avoid paying liquidated damages later." *Id.* at 548-49 (quoting *Burnley*, 730 F.2d at 140).

Likewise, in *Perez v. Mountaire Farms, Inc.,* 650 F.3d 350 (4th Cir. 2011), in which the employer violated the FLSA by failing to pay workers at a chicken processing company for time spent donning and doffing required protective gear, the court upheld the denial of liquidated damages where the employer had relied on the advice of an attorney retained by the National Chicken Council who provided numerous memoranda addressing the compensability of donning and doffing time. *Id.* at 375-76. Because the company "'clearly' changed its policies based on [the attorney's] information and advice," the court denied liquidated damages on the grounds of good faith. *Id.* at 376. Notably, in *Roy* and *Perez*, the Fourth Circuit defined the good faith exception not by reference to the general "unfair" language used in *Richard*, but with the statutory language that there must be "reasonable grounds for believing that [the employer's] act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260, thus making clear that the good faith exception requires that an employer had a good faith basis to believe that there was a legal basis to fail to pay the wages at issue. *Perez,* 650 F.3d at 375; *Roy,* 141 F.3d at 548.

This principle is most clearly illustrated in *McFeeley v. Jackson Street Entertainment, LLC,* 825 F.3d 235 (4th Cir. 2016), in which the employer violated the FLSA by failing to pay nightclub dancers the minimum wage because they were misclassified as independent contractors rather than employees. *Id.* at 245. The evidence established that the employer inherited the pay arrangement from the previous owner but "changed nothing about the way [the clubs] had been operated." *Id.* When the dancers filed a lawsuit about misclassification in 2011, the employer consulted an attorney who provided legal advice, on which the employer relied, that the dancers would qualify as independent contractors if they signed an independent contractor agreement. *Id.* The court held that the employer was not liable for liquidated damages after the 2011 lawsuit, because the employer relied on the attorney's advice and thus had demonstrated "good faith and reasonable

13

belief of compliance with the FLSA," but that it was liable for liquidated damages for the time period before the 2011 lawsuit, because up to that point it had "made no effort to look into the law or seek legal advice," and "if mere assumption amounted to good faith and reasonable belief of compliance, no employer would have any incentive to educate itself and proactively conform to governing labor law." *Id.* Where the Fourth Circuit in *McFeeley* required evidence that the employer had sought out and received advice on the legality of the pay practice in order to permit the application of the good faith exception, this Court finds that, consistent with the statutory language, the good faith exception requires a showing not merely that there was reasonable basis for failing to comply with the FLSA, such as financial hardship, but that there were "reasonable grounds for believing that [the employer's] act or omission was not a violation of the [FLSA]" as demonstrated by some reliance on legal advice or the equivalent. 29 U.S.C. § 260; *see McFeeley*, 925 F.3d at 245.

Notably, Appellee has identified no authority establishing that the good faith exception can be based on a showing of financial hardship that made compliance unreasonable. Appellee's reliance on the decision of the United States Court of Federal Claims in *Martin v. United States*, 130 Fed. Cl. 578 (2017), is misplaced. In *Martin*, after finding that the federal government had violated the FLSA when it required federal government employees to work without pay during the 2013 partial government shutdown, the court rejected the argument that the good faith exception was applicable in light of the Anti-Deficiency Act, 31 U.S.C. § 1341 (2018), which prohibits the federal government from spending funds without an appropriation from Congress, because "there was no avenue for federal agencies to comply with the FLSA." *Martin*, 130 Fed. Cl. at 580, 585-86. Instead, the court reiterated the requirement of the good faith exception that the employer "demonstrate an honest intention to ascertain what the [FLSA] requires and to act in accordance

14

with it," found that the government had taken "no steps to determine its obligations under the

FLSA during the 2013 shutdown," and concluded that an employer's "honest belief that it could

not comply with the requirements of the law" was not sufficient to establish the good faith

exception. *Id.* at 585-86. While the present appeal was pending, *Martin* was reversed by the

United States Court of Appeals for the Federal Circuit on the grounds that "as a matter of law, the

government does not violate" the FLSA's timely payment obligation "when it complies with the

Anti-Deficiency Act by withholding payment during a lapse in appropriations." *Martin v. United*

*States,* ___ F.4th___, 2022 WL 17332973, at *2 (Fed. Cir. Nov. 30, 2022); *see Avalos v. United*

*States,* ___ F.4th___, 2022 WL 17333121, *3 (Fed. Cir. Nov. 30, 2022). Notably, the Federal

Circuit did not address the good faith exception because it determined that under the circumstances

of a government shutdown, the government's failure to pay wages on time does not actually violate

the FLSA; rather, the FLSA and the ADA, when construed together, require payment of wages

only "at the earliest date possible after a lapse in appropriations ends." *Avalos,* 2022 WL 1733121,

at *6. Where, in the end, *Martin* did not involve a violation of the FLSA, it does not provide a

basis to apply the good faith exception under the circumstances of the present case.

Finally, Appellee's reference to United States Department of Labor ("DOL") Field

Assistance Bulletin No. 2020-2 ("the DOL Bulletin"), which provided that the DOL had decided

that it would not pursue liquidated damages in pre-litigation settlements of FLSA violations under

certain circumstances, does not alter the Court's conclusion. First, Appellee has not alleged that

the Debtors relied on this guidance as the basis for late payment of the wages due on April 7, 2020.

Nor could the Debtors have done so: the DOL Bulletin was issued on June 24, 2020, two months

after the missed wage payments, the initiation of the class action litigation, and the bankruptcy

court's order allowing the Debtors to pay their employees the missed wages. Second, the DOL

Bulletin merely stated a DOL default policy for pre-litigation settlements and offered no substantive interpretation of the requirements of the FLSA on which Debtors could have relied in good faith as a basis for a mistaken understanding of the law.

For all of these reasons, the Court concludes that, consistent with the statutory language, the good faith exception from FLSA liquidated damages requires a determination whether the employer had reasonable grounds to believe that its actions complied with the FLSA. The Court declines to accept Appellee's view that the good faith exception can be established by demonstrating good faith and circumstances such as severe financial hardship that render a decision not to make timely wage payments reasonable. Such a conclusion is plainly inconsistent with the statutory language and would drastically alter the availability of liquidated damages. By applying the good faith exception to liquidated damages based on financial hardship rather than on a determination that there were reasonable grounds for believing that the failure to pay was not a violation of the FLSA, the bankruptcy court did not apply the correct legal standard. The Court will therefore reverse the determination that Olsen and the class members are not entitled to liquidated damages. On remand, to the extent that the availability of liquidated damages remains relevant to the resolution of this case, the bankruptcy court shall assess the applicability of the good faith exception under the statutory standard.

## CONCLUSION

For the foregoing reasons, the Court will affirm the bankruptcy court's ruling in the First Bankruptcy Order denying priority for FLSA liquidated damages pursuant to 11 U.S.C. § 507(a)(4).  The Court will reverse the bankruptcy court's determination in the Second Bankruptcy Order that liquidated damages will not be awarded pursuant to the good faith exception and will remand for further proceedings consistent with this opinion.  A separate Order shall issue.

Date:   December 1, 2022

THEODORE D. CHUANG
United States District Judge

17